[No. 1820.  Decided July 13, 1895.]

W. BLACKINTON *et al., Respondents,* v. SIMON RUMPF *et al., Appellants.*

ATTACHMENT — GROUNDS FOR — AFFIDAVIT — EVIDENCE OF FRAUD.

Under the attachment law of this state a plaintiff is entitled to a writ of attachment in an action to recover upon a debt which has been fraudulently contracted.

Under the statute, an affidavit in attachment which alleges that the defendant *has* assigned, etc., his property with intent to delay and defraud his creditors and that he *is about* to assign, etc., his property with like intent, is not open to the objection of being inconsistent and bad in form.

In an action to recover the price of goods, in which the complaint alleged a secret partnership between the two defendants and that they conspired and colluded to defraud their creditors, the business being carried on in the name of one, who subsequently disposed of his property to the other and fled the country, the refusal of the court to dissolve an attachment which had been issued on the ground that defendants had secreted and disposed of their property and were about to do so with intent to delay and defraud creditors, and that they had been guilty of fraud in contracting the debt, is warranted, when it appears that the two had been partners, and after an alleged dissolution had maintained intimate relations; that on the night of the departure of the defendant conducting the business in his own name, they were seen removing goods from the store in a clandestine manner; that the alleged secret partner, while allowing an overdraft to be charged up to him at the bank, was able to pay the sum of $5,000 to the absconding debtor, which sum had been carried by him on his person for sixteen days; and that there had been a transfer of all the absconding debtor's real estate to the other defendant.

*Appeal from Superior Court, King County.*

*Burke, Shepard & Woods,* and *Sapp & Lysons,* for appellants:

One cannot waive a tort and sue upon the implied contract and still use the tortious conduct as the basis of a provisional remedy. *Finlay v. Bryson,* 84 Mo. 664;

*Brewer v. Sparrow,* 7 H. & C. 310; *Rodermund v. Clark,* 46 N. Y. 354; *Goss v. Mather,* 2 Lans. 283; *Wellington v. Drew,* 16 Me. 51; *Brown v. Moran,* 42 Me. 44; *Fireman's Ins. Co. v. Cochran,* 27 Ala. 228; *Whitney v. Allaire,* 4 Denio, 554.

*Arthur E. Griffin,* and *Stratton, Lewis & Gilman,* for
    respondents:

The language of our law would seem to afford a strong argument that it was intended to enlarge the class of cases in which the writ of attachment might issue. *Cole v. Aune,* 41 N. W. 934; *Farmers' National Bank v. Fonda,* 32 N. W. 664. Even in those states where attachments issue only in actions on contract, the circumstances that the breach upon which the writ is claimed is also a tort does not defeat the right. *Penn. R. R. Co. v. Peoples,* 31 Ohio St. 537; *S. C. V., etc., Co. v. Tuck,* 53 Cal. 304; *New Haven S. M. Co. v. Fowler,* 28 Conn. 103; *Wilson v. Mfg. Co.,* 88 N. C. 5; *Selheimer v. Elder,* 98 Pa. St. 154; *Carland v. Cunningham,* 37 Pa. St. 228; *Nethery v. Belden,* 6 South. 464.

The opinion of the court was delivered by

DUNBAR, J.—Simultaneously with the service of the summons in this case a writ of attachment issued against the property of the defendant was levied upon the merchandise of the defendant Joseph Mayer, the defendant Simon Rumpf having disposed of all his property and having fled the country. Defendant Mayer procured the release of his goods by giving a statutory bond for that purpose. Shortly after, Mayer moved the court for an order discharging the writ of attachment as against his property. Sundry affidavits were filed by him and by others on his behalf,—the motion was resisted by counter-affidavits and by trans-

cripts of testimony provisionally taken in other causes and received under stipulation as equivalent to affidavits. Upon said hearing the motion to discharge the attachment was denied, and from the order of the court refusing to discharge the attachment this appeal was taken.

The complaint in the action alleges in substance that the said defendant Mayer and defendant Simon Rumpf entered into a secret arrangement under which they should engage in the jewelry business in the city of Seattle and should purchase and receive on assignment in the name only of defendant Rumpf, wares and merchandise, namely jewelry; and that the interests of said defendant Joseph Mayer in said enterprise should be kept secret and that the proceeds of said business were to be halved and divided among said defendants, and that they conspired and colluded and conceived the scheme of defrauding and cheating all persons from whom they should purchase goods, and that in pursuance of said fraudulent scheme they did begin the business aforesaid in the name of defendant Simon Rumpf, and that thereafter they purchased goods of the plaintiffs to the amount set forth in the complaint. That afterwards, to carry out said scheme, Rumpf disposed of his portion of the property, and fraudulently conveyed to defendant Mayer certain real estate in King county; and that they fraudulently sold all the stock of jewelry, fixtures and furniture then located in his store. There were also other allegations of fraud and collusion on the part of the defendants.

The first contention of appellant is, that either the action sounds in tort and the provisional remedy of attachment is therefore not available, or else, if the action sounds in contract, the alleged fraudulent incurring of the debt having been waived by the plaint-

iff's suing on an implied contract, cannot be alleged as a ground for the attachment. The case of *Finlay v. Bryson*, 84 Mo. 664, is cited in support of that contention. An examination of this case convinces us that it does not sustain the contention of the appellant. In that case the principal portion of the money sued for consisted of the proceeds from two pairs of mules sold by the defendant as property of the plaintiff and applied to his own use. The court in passing upon the attachment in this action was construing a provision of the Missouri attachment law which gives the right to the attachment where the debt sued for was fraudulently contracted on the part of the debtor, and this was all, as we gather from the reported case, that was set forth in the affidavits to sustain the attachment. It was conceded that the remedy was separately provided for in the attachment laws of Missouri, if the action sounded in tort, and the court held that the testimony showed a wrongful conversion of the proceeds of the sale and would not sustain an attachment for an alleged fraudulent contract.

"The wrongful conversion of property," said the court, "which results in damages, is one thing; the fraudulent inducement of a debt is another thing. Both are well known. and the subdivision we are construing, [namely, the subdivision above quoted where the debt sued for was fraudulently contracted for on the part of the debtor,] — refers to the latter and not to the former."

It is true the court, in another portion of the opinion uses the language quoted in appellant's brief, that by electing to sue for the money for which the property was sold the plaintiff affirmed the act of the wrong-doer, claiming the proceeds thereof, and was thereafter estopped from treating the transaction as a wrong, and that he would not therefore be permitted to waive the

tort and to prosecute the defendant for it in the same suit, but it will be seen that what the court intended to say was that a plaintiff would not be allowed to make contradictory statements in his pleadings; that he would not be allowed to get benefits or profits flowing from a contract which he himself asserted was fraudulently made, and whether or not the court in that case reached a logical or correct conclusion it is not necessary to determine, for there are no elements of this kind in the case at bar. This action, so far as the action itself is concerned, is for a simple debt,— the purchase price of the jewelry in question,— and the complaint is consistent with itself and also with the affidavits in support of the attachment.

The citation of cases where it does not appear that the statutes are similar, so far as attachment law is concerned, are of little benefit. This is recognized by Mr. Wade in his work on Attachment, § 10, where he says:

"That the decisions of the courts in the different states of the Union are inharmonious upon the question of the nature of the demand that will support the proceeding by attachment, can certainly be no occasion for surprise, in view of the fact that these decisions are rendered in construing statutes as various in their provisions as could well be imagined. They vary from the most definite restriction to such demands as arise on contract, and are for the direct payment of money only, to the widest latitude that embraces actions for damages, liquidated or unliquidated, arising either *ex contractu* or *ex delicto.*"

And the author sets forth the substantial requirements of the affidavits for attachment in most of the states of the Union. In most of the states, however, the plaintiff is given his election to sue upon the contract or in tort, and where a contract is sued upon, the

fact that the breach upon which the writ is claimed is also a tort does not defeat the right.    In *Pennsylvania R. R. Co. v. Peoples*, 31 Ohio St. 537, the court said:

"The plaintiff had her election to set out the promise, its consideration and breach, and ask judgment, or to set out facts which gave rise to a liability in tort, and pray judgment thereon."

That was a case where a railroad company agreed for a consideration to carry a passenger over its road, and it was alleged that by its negligence an injury resulted to the passenger.    Many cases are cited by the court in this case to sustain the doctrine announced.

An examination of our statute will discover the fact that there are no restrictions whatever.    The statute provides that the plaintiff, at the time of commencing the action or at any time afterwards before judgment, may have the property of the defendant attached when he shall make an affidavit showing that the defendant is indebted to him, and that one of several different conditions of things exist,—among others, that the defendant is assigning, secreting, or disposing of, or is about to assign, secrete, or dispose of any of his property with intent to delay or defraud his creditors; or that the defendant has been guilty of a fraud in contracting a debt and in incurring the obligation for which the action is brought.    These are the two grounds upon which the attachment is asked in this case.    The affidavit in this case sets forth that the defendants are justly indebted to the plaintiff, stating the amount, alleging the other grounds that we have just mentioned, and we think it is amply sufficient.

Another proposition of appellant is that the affidavit for attachment is bad in form in its allegations as to fraudulent disposition of property, the allegations being: (*a*) That the defendant *has* assigned, etc., his

property with intent to delay and defraud his creditors;
(*b*) that the defendant *is about* to assign, etc., his property
with intent to delay or defraud his creditors.
These, it is claimed are inconsistent allegations. This
is the language of the statute — it provides that an attachment
shall issue if the affidavit is made that the
defendant has assigned, secreted, or disposed of, or is
about to assign, secrete or dispose of, etc. If the affidavit
were in the disjunctive, of course the allegations
would be meaningless, because it could not be told from
the language whether the charge was that the defendant
*had* disposed of, or was *about* to dispose of his
property; but here it is stated in the conjunctive, and
under the disjunctive provisions of the statute either
one of the allegations would be a sufficient basis for
attachment. If the defendant has assigned, secreted,
etc., that is sufficient to warrant the issuance of the
writ; or, if he has not done this, but is about to assign,
secrete, etc., that is sufficient basis for the issuance of
the writ. Neither is there anything inconsistent with
the idea that he may have done both. He may have
assigned or disposed of a portion of his property prior
to the making of the affidavit, and he may also be
about to assign or dispose of any portion, or of all of
the remaining portion at the time of the making of the
affidavit. Some cases are cited to sustain this conten
tion, but we think the reasoning is strained, and that
a common sense construction of the statute will sustain
the affidavit in this respect.

This brings us to the discussion of the main proposi-
tion in the case, namely, the contention on the part of
appellant that the proofs in support of the attachment
fail to show the alleged partnership between the de-
fendants, which is the main ground of appellant's
alleged liability. Conceding that this question can be

raised upon a motion to dissolve the attachment, which is a doubtful proposition, and considering this proposition with the other one made by appellant that the proofs in support of the attachment fail to support any grounds alleged for it in the affidavit, we are of the opinion that the testimony shows a state of facts which warranted the court in refusing to dissolve the attachment. The testimony is conflicting, and it is true that many of the allegations of the appellant and of the affidavits are flatly denied by defendant Mayer. Collusion and fraud are always hard to prove; and while this fact will not warrant the court in reaching the conclusion that fraud has been committed, the court must closely scan the circumstances surrounding the case, and look into the motives which naturally actuate men under the circumstances existing.

The testimony shows conclusively — in fact, it is not denied — that these two defendants had been engaged in the business of pawnbrokers and dealers in jewelry, and that after their alleged dissolution, Rumpf proceeded to carry on the same business immediately across the street from the business house of the old firm; that they were on intimate relations with each other; that they were seen together under exceedingly suspicious circumstances, if the testimony of the witness Harris is to be believed (and the court was warranted in believeing it); that upon the night of the sale Rumpf and Mayer and his two brothers were seen carrying goods away from the house in a clandestine manner; that the draft which was alleged to have been given to Rumpf for the goods sold to Basye was presented next morning at the bank by Mayer; that the proceeds of the draft were placed to his credit and used by him in paying his personal debts. He undertakes to explain this by stating that he had advanced

Rumpf the money on this draft the night before as a matter of personal accommodation to Rumpf although he introduces testimony to show that his relations with Rumpf were not cordial, and the most suspicious circumstance is that instead of paying this money and taking up this draft from Rumpf personally he saw fit to employ a person who could easily be made a witness to the transaction, namely, one George W. Hoffman, and this witness placed himself in a very poor light before the court by admitting that he had made statements contradicting the statements that he made in court to Emmons and Battle, and this man, if the testimony of Mayer is true, was intrusted with $5,000 in ready money by Mayer to be carried to Rumpf the night before his departure. Another circumstance throwing suspicion upon the transaction is the fact that Mayer, while claiming to be hard-pressed for money and allowing an overdraft to be charged up to him at the bank, appears to have had this large amount of money about his person for sixteen days prior to its payment to Rumpf on the 28th of August, the night before Rumpf absconded. The whole transaction is inconsistent with the actions of honest business men; the carrying away of the goods in a clandestine manner the night of Rumpf's departure, which business was participated in by Mayer; the payment of this amount of ready money in the night time, and especially its payment in the manner related by Mayer, namely, by intrusting it to a third person, who seems not to have had any very close relations with Mayer — the deeding of all of Rumpf's real estate to Mayer — impresses us with the belief that at least the jury would be warranted in coming to the conclusion that Rumpf and Mayer were equally interested in the purchase and disposition of these goods, and that the allegations of

the complaint were true, and we think that justice demands that this attachment should be maintained until the question of fraud and collusion alleged in the complaint is passed upon by the proper tribunal.

The judgment will therefore be affirmed.

HOYT, C. J., and SCOTT, ANDERS and GORDON, JJ., concur.